IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL-RYAN KRUGER, Special Administrator of the Estate of Andrea Kruger, | ) ) ) ) | |
| Plaintiff, | ) ) | 4:14CV3139 |
| v. | ) ) | |
| STATE OF NEBRASKA; DEPARTMENT OF CORRECTIONAL SERVICES; ROBERT HOUSTON, Retired Director, Department of Correctional Services, in his official and individual capacities; CAMERON WHITE, Behavioral Health Administrator, Department of Corrections, in his official and individual capacities; and DR. RANDY KOHL, in his official and individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

This matter is before the Court on the motion (Filing No. 46) of the four[1] defendants to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). The plaintiff has also filed a motion for oral argument (Filing No. 50). After review of the motions, briefs,

---

[1] This figure reflects the defendants' assertion that the Department of Correctional Services was not intentionally made a defendant and that Kruger has not effected service upon the Department. Filing No. 47 at 9, n.2.

indices of evidence, and relevant case law, the Court finds as follows.

I. BACKGROUND

Plaintiff Michael-Ryan Kruger ("Kruger") was married to Andrea Kruger ("Andrea"), mother of three. Tragically, Andrea was killed by local serial killer Nikko Jenkins ("Jenkins"). Subsequently Kruger learned that his wife's murderer was only recently released from Nebraska Department of Correctional Services following an alleged act of bureaucracy aimed to offload numerous inmates who required mental care from the State. Though not named in this case, Andrea was not Jenkins' sole victim. Jenkins also pleaded guilty in state court for the murders of Jorge Cajiga-Ruiz, Juan Uribe-Pena, and Curtis Bradford.

Kruger, as special administrator of his wife's estate, brought the instant action for various negligence claims and violations of his wife's constitutional rights under Title 42, Sections 1983 and 1988(a) in state court. The defendants removed the case to federal court and Kruger amended his complaint. All defendants moved for dismissal. Following legislative hearings regarding the Nebraska Department of Correctional Services, Kruger wishes to dismiss several defendants and amend his complaint again to include facts learned from the legislative hearings. Though the motions to dismiss were pending, the Court

allowed Kruger to amend his complaint which rendered the pending motions to dismiss moot.  In his amended complaint, Kruger essentially alleges that the defendants, in their individual and official capacities, ignored the dangers Jenkins presented and failed to prevent his wife's murder.

The remaining defendants are the State of Nebraska, Robert Houston ("Houston"), the director of the Department of Correctional Services at all relevant times, Dr. Cameron White ("White"), who was the behavioral health administrator for the Department of Correctional Services during all relevant times, and Dr. Randy Kohl, who administered overall mental health services throughout the State during all relevant times.  Filing No. 44, at 1.  Kruger brings Nine Causes of Action against the defendants in their official and individual capacities.  The First, Second, and Third Causes of Action allege 42 U.S.C. § 1983 claims against the defendants.  The remaining six Causes of Action allege various negligence claims and statements of damages.

Kruger claims that actions and inactions of the defendants constituted deliberate indifference to the policies, practices or customs governing treatment and incarceration resulting in the injuries suffered by Andrea (Filing No. 44, at 13-14).  Specifically, Kruger claims defendants Houston, White,

and Dr. Kohl deprived Andrea of her Constitutional rights, privileges and immunities, and acted with a deliberate indifference to the mental health needs of an inmate in their custody. Kruger states Houston, White, and Dr. Kohl were aware of facts which "presented a substantial risk of serious harm to Andrea Kruger and the citizens of Nebraska, and in fact, drew that inference." (*Id.* at 12). "The Defendants created the dangerous situation and harm that happened to Andrea Kruger." (*Id.*).

II. LEGAL STANDARDS

The Court has an obligation to consider *sua sponte* whether it has subject matter jurisdiction over a case. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014). The Court "must raise jurisdictional issues 'when there is an indication that jurisdiction is lacking, even if the parties concede the issue.'" *Id*. (quoting *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991)). Suits are subject to dismissal when the Court lacks subject matter jurisdiction to hear the matter. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at 679.  Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.*  Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Accordingly, the Supreme Court has prescribed a "two-pronged approach" for evaluating Rule 12(b)(6) challenges. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.*  Second, the factual allegations must be examined for facial plausibility. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at* 677 (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully).  A court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of

the claim. *Twombly* at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 558; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III. DISCUSSION

As a preliminary matter, plaintiff believes the defendants have waived their Sovereign Immunity defense and that the Court should therefore deny the defendants' motion to dismiss the First, Second, and Third Causes of Action against Nebraska and its employees for lack of subject matter jurisdiction pursuant to the Eleventh Amendment to the United States Constitution and the doctrine of Sovereign Immunity. Filing No. 48, at 3. The plaintiff argues that the Supreme Court's precedent in *Lapides v. Board of Regents*, 535 U.S. 613 (2002) is controlling and that it holds whenever a state removes a case from state to federal court, the state waives its sovereign immunity defense entirely. The issue is whether Nebraska has waived its sovereign immunity defense by removing this case from state court to federal court in reliance on this Court's jurisdiction.

The Court does not agree with the plaintiff's expansive reading of *Lapides*, both because of the expressly limited scope

of the Justices' opinion and because no subsequent case law recognizes that proposition. *Lapides*, 535 U.S. at 618-19; *Vacek v. Nebraska*, 4:14CV3000, Filing No. 7, at *3 (D. Neb. Jan. 30, 2014); *see also United States v. Metro. St. Louis Sever Dist.*, 578 F.3d 722, 724-25 (8th Cir. 2009) (finding that a state may waive sovereign immunity by filing a case in federal court); *Skelton v. Henry*, 390 F.3d 614, 618 (8th Cir. 2004) (concluding that the filing of a counterclaim in response to a complaint filed in federal court does not waive sovereign immunity).  In *Lapides*, Georgia statutorily waived its sovereign immunity for similar actions.  Georgia removed the case into federal court so that it could reclaim its Sovereign Immunity argument pursuant to the Eleventh Amendment.  The United States Supreme Court found this litigation tactic unfair and further found that Georgia had waived its sovereign immunity defense by removing the case to federal court. *Lapides*, 535 U.S. at 620-21.  The Court painstakingly limited its opinion "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617.  Therefore, Nebraska's removal of this case does not waive its sovereign immunity defense *per se*.

A.   FIRST THEORY:  ANDREA'S DUE PROCESS RIGHTS

    1.   NEBRASKA AND THE OFFICIAL CAPACITIES OF HOUSTON, WHITE, AND KOHL

Kruger asserts three claims pursuant to 42 U.S.C. § 1983 against the State of Nebraska and its employees, in their official capacities, for violating Andrea's rights. "[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides*, 535 U.S. at 617 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989)). Also, "[a] suit against a State employee in his or her official capacity is, in reality, a claim against the State itself." *Will*, 491 U.S. at 71. Because Kruger seeks monetary damages against Nebraska and its employees, Nebraska's motion to dismiss plaintiff's First, Second, and Third claims against Nebraska and the official capacities of Houston, White, and Kohl will be granted pursuant to the doctrine of Sovereign Immunity.

    2.   THE INDIVIDUAL CAPACITIES OF HOUSTON, WHITE, AND KOHL

Kruger also asserts these three § 1983 claims against Nebraska employees, in their individual capacities, for violating Andrea's Constitutional rights. The defendants believe this Court should dismiss these claims on the basis that these claims offer no cognizable Constitutional claim, that the "State-created-danger doctrine" does not apply in this case, and the

doctrine of qualified immunity shields the defendants from liability.  Filing No. 47, at 14-21.

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States."  *Martinez v. California*, 444 U.S. 277 (1980) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  Kruger claims Nebraska and its employees denied Andrea of her right to life and liberty without due process by setting into motion the release of Jenkins which led to Andrea's murder.  Filing No. 44, at 13-14.

Kruger has failed to plead that Andrea was deprived of a right secured by the Constitution and laws of the United States.  The defendants did not contravene Andrea's right to life or liberty without due process of law.  This argument, in the context of this case and these facts, has well established law contrary to Kruger's arguments.

The United States Supreme Court offers one such example in *Martinez v. California*.  In *Martinez*, the State of California released a parolee who killed a girl five months after his release from jail.  *Martinez*, 444 U.S. at 279.  Survivors of the girl brought a § 1983 action against the state.  *Id.*  The Court ultimately held:

> Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to "deprive" someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as "a species of tort liability," it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

*Id.* at 285 (internal citations omitted). Kruger distinguishes the Court's analysis in *Martinez* from the present case because of the different time frames. It is true the Court relied upon the five-month time frame in making its findings, and that the Court refused to rule on whether a parole officer could ever be "deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole." *Id.* However, in the wake of *Martinez*, several Circuit Courts have declined to impute liability for the actions of those released from state

-10-

incarceration on to the individuals who released the former inmates under § 1983 within shorter intervals. *Lovins v. Lee*, 53 F.3d 1208 (11th Cir. 1995); *Davis v. Fulton County*, 90 F.3d 1346 (8th Cir. 1996); *Fox v. Custis*, 712 F.2d 84 (4th Cir. 1983); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Nine years afer the *Martinez* decision, the Supreme Court delivered its opinion in *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989). Therein the Supreme Court established the special relationship doctrine to determine whether the Fourteenth Amendment requires a state to protect its citizens from invasion from private citizens. *Id.* at 195-96. The Court held that there are certain limited circumstances in which "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help . . ., but from the limitation which it has imposed on [one's] freedom to act on [one's] own behalf." *Id.* at 198 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1995)). Without these special circumstances, a § 1983 action must fail. *See id.* at 197. In no event could discovery uncover evidence that Andrea was in the special circumstances articulated in *DeShaney,* and the plaintiff is unable to argue to the

contrary.  *See* Filing No. 31 at 14, 24, 26.  To the extent that Kruger argues that a special relationship existed between Jenkins and the Nebraska defendants, the Court will address those arguments below.

Due Process can also require the state to protect individuals when the state created the danger to which the individuals are subjected.  *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011), *Estate of Johnson v. Weber*, No. CIV 12-4084, 2014 WL 2002882, at *5 (D.S.D. May 15, 2014).  To succeed on the state-created danger theory of substantive due process, Kruger must prove the following:

> (1) that [Andrea] was a member of a limited, precisely definable group, (2) that the defendants' conduct put [her] at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the defendants, (4) that the defendants acted recklessly in conscious disregard of the risk, and (5) that in total, the defendants' conduct shocks the conscience.

*Fields*, 652 F.3d at 891, *Johnson*, No. CIV 12-4084, 2014 WL 2002882, at *6.  Andrea was not a member of a limited, precisely definable group.  In his previous amended complaint, Kruger argued Andrea was a member of the public and that made her a limited, precisely defined group, which is not true.  Filing No.

-12-

31, at 28. In the current complaint, Kruger avoids referring to Andrea as a member of the public in his § 1983 Causes of Action, but in the Fourth Cause of Action, he referred to her as a member of the public. Filing No. 44, at 15-16. Membership in the general public is not tantamount to membership in a limited, precisely definable group. Kruger has failed to prove that Andrea was a member of a limited, precisely definable group because the general public is not a limited, precise, or defined group.

Therefore, Kruger fails to articulate a cognizable Constitutional claim, the special relationship doctrine does not apply to this case, and the "State-created-danger doctrine" also does not apply in this case. The Court need not turn to the issue of qualified immunity. For the foregoing reasons, Kruger's First, Second, and Third claims against the defendants in their individual capacities will be dismissed. *See Martinez*, 444 U.S. at 285, *DeShaney*, 489 U.S. 189 (1989), *Davis v. Fulton County*, 90 F.3d 1346 (8th Cir. 1996), *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011); *see also Lovins v. Lee*, 53 F.3d 1208 (11th Cir. 1995); *Fox v. Custis*, 712 F.2d 84 (4th Cir. 1983); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982), *Estate of Johnson v. Weber*, No. CIV 12-4084, 2014 WL 2002882, at *5 (D.S.D. May 15, 2014).

B.   SECOND THEORY: STATE LAW CLAIMS

    1.   INDIVIDUAL CAPACITY

        The defendants move to dismiss Kruger's Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action for various reasons.  First, the defendants maintain that, because Kruger alleges that Houston, White, and Kohl acted within the scope and course of their employment with the State of Nebraska, Kruger's sole recourse is to file claims against the remaining defendants in their official capacities.  Filing No. 47, at 25 (citing *Young v. Douglas County*, No. 8:07CV265, 2009WL2568061, at *1 (D. Neb. Aug. 19, 2009)).  Therefore, the defendants move to dismiss the remaining Causes of Action against Houston, White, and Kohl in their individual capacities.

        Pursuant to the Nebraska Supreme Court case, *Bohl v. Buffalo County*, the Court analyzes whether Kruger may assert claims against the remaining defendants in their individual capacities.  The issue is whether these defendants acted solely within their capacities as employees of the State of Nebraska. If the defendants "did not act within the scope of [their] employment," Kruger may pursue his claim against them in their individual capacities; however if it is determined that the defendants "did act within the scope of [their] employment," Kruger would have had to comply with the requisites set out in

the State Tort Claims Act. Filing No. 47, at 25-26 (citing *Young*, No. 8:07CV265, 2009WL2568061, at \*6; *Big Crow v. City of Rushville*, 266 Neb. 750, 755, 669 N.W.2d 63, 67 (Neb. 2003)); *See also* No. 8:07CV265, Filing No. 216, at 48 (quoting *Bohl v. Buffalo County*, 251 Neb. 492, 500, 557 N.W.2d 668. 674 (1997)). The parties do not dispute that the defendants acted solely within the scope of their employment. Filing No. 47 (Defendants' Second Motion for Dismissal) at 26 (citing Filing No. 44 (Plaintiff's Second Amended Complaint) at 2, ¶ 7 ("At all times alleged herein, the individual Defendants listed above and their agents were acting within the scope and course of their employment with their various employers.")). Therefore, the Court will grant the defendants' motion to dismiss all remaining Causes of Action against the remaining defendants in their individual capacities.

    2.   OFFICIAL CAPACITY: DISCRETIONARY FUNCTION EXCEPTION

Second, the defendants move to dismiss Kruger's Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action against Houston, White, and Kohl in their official capacities pursuant to the Discretionary Function Exception. The State Tort Claims Act governs state law tort claims brought against State officials acting within the course and scope of their employment. *See Doe v. Bd. of Regents*, 280 Neb. 492, 512 788 N.W.2d 264, 282 (2010);

Neb. Rev. Stat. § 81-8,209. This statute provides a limited waiver of Nebraska's Sovereign Immunity for many tort claims, but it also lists exceptions to that waiver. *Id.*; Neb. Rev. Stat. § 81-8,219. A defendant may affirmatively plead that the plaintiff has failed to state a cause of action because an exception to the waiver of Sovereign Immunity applies. *Id.* at 513.

Among the Tort Claim Act's exceptions is the "discretionary function exception," which reads as follows:

> The State Tort Claims Act shall not apply to . . . [a]ny claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute, rule, or regulation . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion is abused.

Neb. Rev. Stat. § 81-8,219(1). Therefore, any state employee's action or inaction in a discretionary function cannot be the basis for liability under the Act because Nebraska preserves its Sovereign Immunity under this doctrine. *Jasa By and Through Jasa v. Douglas County*, 244 Neb. 944, 955, 510 N.W.2d 281, 288 (1994) (quoting *Wickersham v. State*, 218 Neb. 175, 180, 354 N.W.2d 134, 138-39 (1984)). A discretionary function exception is when a

governmental executive or administrator has discretion to act according to one's judgment of the best course to be taken.  *See id.*

The defendants state that Kruger failed to allege in his Second Amended Complaint that the remaining defendants had no discretion (1) in failing to grant or withhold Jenkins' good time credits, or (2) in declining to pursue a civil commitment of Jenkins.  Filing No. 47, at 28.  Because Kruger did not plead that the defendants lacked discretion in these two matters, the defendants argue, the discretionary function exception requires dismissal.

   a. "GOOD TIME"

Insofar as Kruger alleges negligence in the defendants' calculation of Jenkins' good time, the Court finds the discretionary function exception shields the defendants from liability.  The Nebraska "good time law" reads as follows:

> While the offender is in the custody of the department, reductions of terms granted pursuant to subdivision (2)(a) of this section ***may*** be forfeited, withheld, and restored by the chief executive officer of the facility with the approval of the director after the offender has been notified regarding the charges of misconduct.

-17-

Neb. Rev. Stat. § 83-1,107(3).  In *Jasa By and Through Jasa,* the Nebraska Supreme Court interpreted the word "may" in a Nebraska statute to mean that a government agency "had the power to make bacterial meningitis a reportable disease."  *Jasa By and Through Jasa*, 244 Neb. at 962, 510 N.W.2d 281, 291 (construing Neb. Rev. Stat. § 71-503.01).  The Court ultimately ruled that this language made the statutes discretionary and therefore the discretionary function exception shielded Douglas County under the Tort Claim Act.  *Id.* at 292, 510 N.W.2d at 963.

It is obvious from the language of Nebraska Revised Statute Section 83-1,107(3) that the forfeiture, withholding, and restoration of "good time credits" are within the purview and shared discretion of the chief executive officer of the facility with the approval of the director.  No argument can overcome the clear and plain meaning of this statute and the Court finds that the language of the statute is discretionary.  Therefore, the Court will grant the defendants' motion to dismiss all claims against them in their official capacity based upon a violation or negligent application of the good-time credit statute.

    b.   CIVIL COMMITMENT

Kruger also claims to have been injured by the failure of the defendants to follow state mandated civil commitment procedures for Jenkins.  Defendants seek to dismiss this

allegation against the remaining defendants in their official capacity. The statute in question reads as follows:

> Any person who believes that another person is mentally ill and dangerous **may** communicate such belief to the county attorney . . . . **If the county attorney concurs that such person is mentally ill and dangerous** and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by a mental health board is available or would suffice to prevent the harm described in section 71-908, he or she shall file a petition as provided in this section.

Neb. Rev. Stat. § 71-921(1). For the same reasons stated above, the Court construes the meaning of the word "may" as discretionary here. In addition, the county attorney's duty to concur with such reports is discretionary because the statute contains the word "may." Therefore, the Court will grant the defendants' motion to dismiss Kruger's claims against the remaining defendants in their official capacity insofar as they plead allegations which fall within the Discretionary Function Exception.

       c.   MISCELLANEOUS

Kruger makes an ostensible claim of misrepresentation when he alleges that the remaining defendants withheld documents

from other officials concerning Jenkins. Pursuant to the Tort Claims Act preservation of Sovereign Immunity for the claim of misrepresentation, the Court will grant the defendants' motion to dismiss these claims against the remaining defendants in their official capacity. A separate order will be entered in accordance with this memorandum opinion.

DATED this 9th day of February, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court